## Kentucky Cent. Life & Accident Ins. Co. v. Lynn.

March 28, 1947.

W. B. Ardery, Judge.

OPINION OF THE COURT BY JUDGE SILER—Reversing.

Pat Lynn, the appellee, recovered judgment for $390, the death benefit of a life insurance policy issued by Kentucky Central Life and Accident Insurance Company, the appellant, and the latter made motion for this appeal.

It is now contended that the judgment should be reversed because the trial court erred in refusing to direct a verdict in favor of appellant.

On May 28, 1945, a written application was made to appellant for this policy insuring the life of Charles T. Lynn, 18 year old son of appellee, and naming the appellee as beneficiary. On June 11, 1945, the policy itself was issued and delivered, no physical examination being required for this type of contract. On December 3, 1945, when the policy was less than six months old and when total payment of $6.75 in premiums had been made, the insured died. The death was caused by diabetes, a disease which the appellee admitted his insured son had, and for which he had been regularly treated by physicians, during a period of more than a year before the date of the application for this policy.

Among others, the following statements were contained in this application:

"23. What illness, disease or injuries has life proposed had in the past 3 years?

None.

Names of Doctors.

• • • • • •

"25. Have you ever had heart disease, asthma, tuberculosis, cancer, ulcers, diabetes, * * *? If yes, give particulars.

No.

. . . . .

"I hereby declare that I have read the above, that the information therein is true and is made by me for the purpose of inducing the Kentucky Central Life & Accident Insurance Company, to issue to me a policy of insurance as above indicated. I agree that in the event any of said statements or answers are false that same shall invalidate any claim under the policy issued on this application; that the signing of this application does not constitute an Insurance Contract and the insurance hereby applied for shall not be effective prior to the date and delivery of policy and subject to the conditions set forth in the policy; and that I am now in sound health, * * *.

"Charles T. Lynn
"Applicant's signature."

Upon appellant's refusal to pay appellee's claim arising out of the insured's death, this suit was filed to enforce collection.

The appellant pled, in answer, three defenses, viz., (A) that material misrepresentations had been made to induce issuance of this policy, which would not have been issued had the truth been known; (B) that the policy contained a provision giving the appellant the right, by a return of all premiums, to void the policy during its first two years if during the two years before its issuance the insured had consulted a physician or received treatment for disease; (C) that the policy contained a provision putting the risk in effect only when the policy should be delivered to the insured while in good health. The appellant also pled that this policy contained a provision on its front sheet stating, in substance, that no person had authority to waive any condition in the policy except by an endorsement thereon signed by appellant's president or secretary. Concluding its answer, appellant further pled its election to void the policy and it thereupon tendered back to appellee $6.75, the entire premium paid on the policy, and requested dismissal of the suit.

The appellee pled, in reply, that appellant's soliciting agents were told the true facts as to the insured's health, that these agents themselves wrote the false answers into the application for this policy, that the appellant thus waived any requirement for true answers in this application, that the appellant thus became estopped to deny its liability under the policy.

On this trial, the evidence for appellee beneficiary showed that appellant's agents had been told the true facts about the insured's diabetic condition and about his recent treatment by physicians, that the agents themselves had written false answers to questions in the application relative to previous diseases, including that of diabetes mentioned specifically, that the insured had every appearance of a sick man when the application was written, that the application had been signed by the insured's mother but in the insured's presence and with his acquiescence.

But, on the other hand, the evidence for appellant insurer showed that appellant's agents knew nothing of the insured's true state of health, that the answers in this application were written into it just as they were received, that the insured looked healthy, that the insured had signed the application, that the misrepresentations were material to the risk, that the policy would not have been issued had the true facts been known.

The law is that a material misrepresentation in an application for an insurance policy, though innocently made, will avoid it; also that even though such misrepresentation may not be material, yet if it has been fraudulently made by the insured, it will, nevertheless, avoid the policy. Prudential Ins. Co. of America v. Lampley, 297 Ky. 495, 180 S. W. 2d 399; Kentucky Home Mutual Life Ins. Co. v. Suttles, 288 Ky. 551, 156 S. W. 2d 862; Ford v. Commonwealth Life Ins. Co., 252 Ky. 565, 67 S. W. 2d 950; National Life & Accident Ins. Co. v. Fisher, 211 Ky. 12, 276 S. W. 981; Security Life Ins. Co. of America v. Black's Adm'r, 190 Ky. 23, 226 S. W. 355.

Now in this case there was a material misrepresentation. Therefore, the policy would have to be avoided unless the appellee has himself avoided such voidance by establishing that appellant's agents knew the true facts, yet wrote false answers in the application and

thereby waived the requirement for true representations.

The law has likewise been established that the insurer may be estopped to deny its liability on its policy if its agent has inserted false statements in the written application or if such agent has induced, by misleading statements, the insured, while acting in good faith, to make false answers. Provident Life & Accident Ins. Co. v. Parks, 238 Ky. 518, 38 S. W. 2d 446, 448; Standard Auto Ins. Association v. Russell, 199 Ky. 470, 251 S. W. 628; Aetna Life Ins. Co. v. McCullagh, 185 Ky. 664, 215 S. W. 821; Hartford Ins. Co. v. Haas, 87 Ky. 531, 9 S. W. 720, 10 Ky. Law Rep. 573, 2 L. R. A. 64.

There was a contrariety of evidence on this question of whether or not appellant's agent inserted false statements in this application. Therefore, the trial court would have been correct in submitting this question to a jury for decision if the defense of the material misrepresentations had been the sole and only defense set up by the appellant. But, the additional defense was made by the appellant that it had the right, under the policy provisions, to avoid this policy if the insured had been treated for a disease during the two year period prior to the date of issuance of the policy. And there was then pled the additional policy provision, which was written upon the face of the policy and which manifested itself as a part of the binding contract between the parties upon its delivery, to the effect that no person had authority to waive or change any part of the policy except by an endorsement thereon signed by the president or secretary of the insurer. While appellee could and did join issue with appellant as to the latter's first asserted defense, yet he was not able to refute the contractual elements of appellant's second defense. There appears to be no reason why appellant's second defense, which was properly pled and undeniably established, did not furnish such a legal shield as to have made it incumbent upon the trial court to have directed a verdict in favor of appellant by reason of the contractual provisions to which we have referred.

We perceive that an insurer's agent might waive every precautionary feature of a written application for an insurance policy and might act in such a misleading

manner that only the jail should be his proper home, yet if the contract itself subsequently came along and said on its face, "this is our binding agreement and only the insurer's president or secretary may waive any part of it," we see no basis for excusing the insured from the operative force of such a contract as written and delivered. This insured was an intelligent young man, able to read and write and understand. The policy required no payment of premium until its delivery. When this policy was delivered to the insured on June 11, 1945, we believe that it was incumbent upon him to have read it over and then, if dissatisfied with his contract as written, to have raised a righteous row in protest because such contract provided, first, that it might be avoided simply because the insured had diabetes and, second, that the health requirements could be waived only by the insured's president or secretary. We believe it would have been incumbent upon him to have refused such a policy, on the ground that it was not the contract ordered by him at all, and he would have been fully justified under those conditions in refusing to make payment of the premium.

In order to enable a litigant to assert a valid plea of estoppel against his antagonist, it is essential that such litigant must have been deceived to his detriment by the conduct of such antagonist. See City of Covington v. Patterson, 191 Ky. 370, 230 S. W. 542. Applying this principle to the instant case in order to determine whether or not appellee's plea of estoppel reached the second defense of appellant, the defense that the policy itself provided that it might be voided if the insured had been treated for disease during the two years before the issuance date, it seems clear that the insured, a literate man of good understanding, was not deceived when he received the policy itself in black and white and then had opportunity to know that no part of it could be waived by any soliciting agent. When the insured received and read this policy, he faced no necessity of suffering any detriment. He could have refused to accept the policy or to pay the premium because such policy did not irrevocably accept the risk, in accordance with his previous understanding with the soliciting agent, the risk of insuring himself, a man who had been receiving treatment for diabetes.

Everyone admits that a fraud was practiced in this case. But appellee says that the fraud was that of the insurer's soliciting agent, while the appellant says that the fraud was that of the insured. Everyone must admit that it could not possibly be a good business risk for any insurer to insure a person with an advanced case of diabetes such as this insured had on the date of this policy. It is bad sportsmanship to shoot into a covey on the ground. It is good sportsmanship to give them a flying chance. Likewise, it is bad sportsmanship to get within an insurance coverage only after the very structure itself has begun to burn into the smoldering flame of its pending disaster. It ought to be good sportsmanship to give insurers reasonable opportunity to remain in business, especially so in view of the fact that they are frequently nothing but composites, under mutualization process, of the thousands of little people they insure.

It is not necessary to discuss nor to consider the third defense made by appellant.

We believe that the trial court committed error in refusing to direct a verdict for appellant after it had pled and then proven, by the introduction of the policy itself in evidence, its second defense as set out above.

Wherefore, the ⁕motion for an appeal is sustained and the judgment is reversed for the reason herein indicated with directions that upon a second trial, if the evidence remains unchanged, a judgment be entered for appellee only for the amount of the premium paid on the policy issued by appellant.