IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMSC-029

Filing Date: June 27, 2013

Docket No. 33,380

JAMES M. PALENICK,

     Plaintiff-Respondent,

v.

CITY OF RIO RANCHO,

     Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**George P. Eichwald, District Judge**

Montgomery & Andrews, P.A.
Randy S. Bartell
Holly Agajanian
Andrew S. Montgomery
Santa Fe, NM

for Petitioner

Law Office of Daniel Faber
Daniel M. Faber
Santa Fe, NM

for Respondent

Peifer, Hanson & Mullins, P.A.
Gregory P. Williams
Albuquerque, NM

for Amicus Curiae New Mexico Foundation for Open Government

1

**OPINION**

**MAES, Chief Justice.**

**{1}** This appeal stems from the termination of Rio Rancho's City Manager, James Palenick (Palenick), and requires us to address the narrow issue of whether Palenick is estopped from pursuing a breach of contract claim against the City of Rio Rancho (the City) based on an alleged violation of the Open Meetings Act (OMA), NMSA 1978, Sections 10-15-1 to -4 (1974, as amended through 2009). We conclude that there is substantial evidence to support the district court's finding that Palenick waived his right to pursue a breach of contract claim against the City based on an alleged violation of the OMA. Because we conclude that Palenick waived his right to pursue a breach of contract claim, we need not decide whether there was in fact a violation of the OMA.

**I.     FACTS AND PROCEDURAL HISTORY**

**{2}** Palenick was hired by the City to serve as City Manager in November 2006. Palenick and the City entered into an employment agreement which provided that Palenick would be employed for an indefinite period of time and would serve at the pleasure of the City Council, the City's Governing Body. More specifically, the agreement provided that if Palenick was terminated without cause the City was required "to pay [Palenick] a lump sum cash severance payment equal to six (6) months [of Palenick's] aggregate salary and benefits, plus one month for each year in service as City Manager." Palenick was also entitled to compensation for all vacation time earned, holidays, personal annual leave, and all other benefits that he had accrued up until the date of termination. In the event that Palenick was terminated for cause, he was not entitled to any of the aforementioned benefits. According to the terms of the agreement, Palenick was to be exclusively employed by the City and was therefore prohibited from having additional employment unless he obtained prior approval from the City Council.

**{3}** On December 13, 2006, the City Council held a meeting and voted to terminate Palenick's employment. On December 14, 2006, Palenick hand-delivered a letter to the City's Human Resources Department requesting his severance package as provided for in the employment agreement. The letter made no mention of the circumstances surrounding his termination. On December 21, 2006, Palenick sent a revised letter to the City's Human Resources Department in which he modified his original severance calculations, but did not mention anything about an OMA violation. Human Resources responded to the letters and informed Palenick that as of December 13, 2006, he was no longer considered a City employee. Palenick did not object to the statements contained in this letter. The City then, pursuant to the employment agreement, paid Palenick his severance payment and all of the other benefits to which he was entitled. After December 13, 2006, Palenick did not perform any work for the City, and the City appointed a new City Manager. In August 2007, Palenick was hired to serve as City Manager for the City of Gastonia, North Carolina.

2

**{4}** Shortly thereafter Jim Owen, the former Mayor of Rio Rancho, filed a complaint with the Attorney General's Office alleging that the City had violated the OMA when it terminated Palenick on December 13, 2006. The Attorney General's Office informed the City that the manner in which it terminated Palenick's employment violated the OMA and that the violation invalidated Palenick's termination. The Attorney General informed the City that, because of discussions regarding Respondent's employment status that predated the meeting on December 13, 2006, the City violated the OMA in terminating Respondent's employment at that meeting and that the violation invalidated the City Council's action terminating Respondent. The City Council held a meeting on November 14, 2007, and adopted a resolution to address the Attorney General's concerns. The resolution stated that "[i]f at all relevant, any and all prior actions undertaken in terminating [Palenick's] employment with the City and set forth in writing are hereby ratified and approved." By this resolution, the City Council intended to ratify and approve its prior action terminating Palenick's employment effective December 13, 2006.

**{5}** Palenick sued the City alleging a violation of the OMA and for breach of contract seeking unpaid salary and benefits dating back to December 13, 2006, when Palenick was last paid by the City. After the bench trial on July 1, 2009, the district court issued its findings of facts and conclusions of law in which it concluded that the City's actions at the December 13, 2006 meeting had violated the OMA, but that the resolution adopted by the City Council on November 14, 2007 retroactively cured the OMA violation, and that Palenick's election to proceed with his demand for severance payments amounted to a waiver of his right to pursue a breach of contract action based on the City's OMA violation. Palenick subsequently filed a motion for a new trial which the district court denied. Palenick appealed to the Court of Appeals

**{6}** The Court of Appeals held that "the district court erred in determining that the City's November 14, 2007, resolution retroactively rectified, ratified, and approved the invalid December 13, 2006, action taken in violation of the [OMA] thereby making the termination valid and effective as of December 13, 2006." *Palenick v. City of Rio Rancho*, 2012-NMCA-018, ¶ 9, 270 P.3d 1281. The Court further held that "[u]nder these circumstances, [there was] no basis upon which [Palenick] should be barred on a waiver or estoppel ground" from pursuing a breach of contract claim; and that the City's failure to file a cross-appeal precluded the Court from addressing the issue regarding whether Palenick had established that there was in fact a violation of the OMA. *Palenick*, 2012-NMCA-018, ¶¶ 11-12.

**{7}** We granted certiorari to address the following issues: (1) whether the Court of Appeals' holding that a public entity cannot give retroactive effect to the ratification of a prior act taken in violation of the OMA is inconsistent with controlling precedent and statutory law; (2) whether the Court of Appeals' requirement that a prevailing party must file a notice of cross-appeal in order to raise alternative arguments in favor of affirming the district court is contrary to NMSA 1978, Section 39-3-2 (1966), Rule 12-201(C) NMRA, and New Mexico case law; and, (3) whether the Court of Appeals misapprehended the City's waiver by estoppel defense and further erred by applying the incorrect standard of review

3

when determining whether the district court erred in its application of waiver by estoppel to Palenick's breach of contract claim. Accordingly, for the reasons that follow we reverse the Court of Appeals and hold that Palenick's demand and acceptance of the severance package from the City amounted to a waiver of Palenick's right to pursue claims against the City for its alleged violation of the OMA, as well as his right to bring a breach of contract claim for additional wages. Therefore, we need not address whether the OMA allows for a public entity to ratify prior actions, or whether Section 39-3-2, and Rule 12-201 (C) require a prevailing party to file a notice of cross-appeal in order to raise alternative arguments in favor of affirming the district court.

## II. STANDARD OF REVIEW

{8}     Unless the facts are undisputed or clearly established, the question regarding whether a party intended to waive a right is ordinarily a question of fact. *See Chavez v. Gomez*, 77 N.M. 341, 345, 423 P.2d 31, 33 (1967). The City asserts that because the issue of waiver is a question of fact, and the facts in this case are in dispute, the Court of Appeals erred in reviewing this issue de novo. Palenick asserts that regardless of what standard of review applies, the Court of Appeals was correct in reversing the district court's order.

{9}     Here, the parties were in disagreement about the date of Palenick's termination, the effect that the termination had on Palenick's ability to collect wages from the City, and whether the City's November 14, 2007 actions cured the alleged OMA violation. The facts underlying the waiver by estoppel issue, however, are not in dispute. Therefore, we agree with the Court of Appeals that, in this case, the issue of waiver is a question of law subject to de novo review. *Crutchfield v. New Mexico Dep't of Taxation and Revenue*, 2005-NMCA-022, ¶ 28, 137 N.M. 26, 106 P.3d 1273 (providing that "[w]hen a party is challenging a legal conclusion, the standard for review is whether the law correctly was applied to the facts" (quoting *Golden Cone Concepts, Inc., v. Villa Linda Mall, Ltd.*, 113 N.M. 9, 12, 820 P.2d 1323, 1326 (1991)). Accordingly, we review de novo the issue regarding whether Palenick waived his right to challenge his termination.

## III. DISCUSSION

{10}     The district court concluded that Palenick's demand for and acceptance of a severance payment waived his right to pursue a breach of contract claim against the City. The Court of Appeals reversed the district court's finding that Palenick had waived his right to any salary and benefits because he had demanded and received the severance payment when he was initially terminated. *Palenick*, 2012-NMCA-018, ¶ 11. In so doing, the Court held that "the circumstances [did] not permit a determination of waiver or relinquishment of a known right or waiver by estoppel." *Id.* The Court reasoned that because Palenick would have been entitled to severance benefits regardless of when he was fired there [was] no basis to deny him his right to pursue a breach of contract claim. *Id.*

{11}     The City asserts that the crux of its waiver by estoppel argument is that Palenick's

4

demand and acceptance of a severance payment is inconsistent with his assertion that he was still an employee after December 13, 2006, and that the Court of Appeals misunderstood its waiver by estoppel argument and that based on that misunderstanding it improperly reversed the district court. The City's argument, therefore, is that because Palenick's actions following the December 13, 2006 termination amounted to waiver by estoppel, it is not required to pay Palenick the salary and benefits that Palenick would have received had he been an employee during the period between December 13, 2006 and November 14, 2007.

**{12}** Palenick appears to interpret the City's waiver argument as an attempt to prevent him from getting severance payments under the employment agreement. Palenick asserts that by making a demand for the severance payments he was alerting the City to his right to severance payments, not waiving it. Palenick further asserts that the City did not demonstrate that Palenick intended to waive his right to severance payments, and therefore the City's argument regarding waiver would require this Court to engage in unsupported guesswork.

**{13}** Palenick has not accurately represented the City's assertions. The City has not asserted that Palenick waived all rights to severance payments. Rather, the City has asserted that Palenick waived his right to challenge his termination date by demanding and accepting his severance benefits. Palenick directs this Court's attention to the City's counterclaim to support his assertion that the City is attempting to prevent him from getting his severance package. In the City's counterclaim, however, the City asserts that Palenick is only able to receive severance payments upon termination, and that if the district court concludes that Palenick was not fired until November 14, 2007, then Palenick should be required to reimburse the City for the severance package, plus interest, that was paid to Palenick in December 2006. The City's counterclaim does not state that Palenick is not entitled to severance payments, but rather states that Palenick is not entitled to collect the severance payments in addition to a salary for the period spanning December 14, 2007 through November 14, 2007. Thus, the City's waiver by estoppel argument is based on the fact that Palenick demanded his severance payment at a time when he did not believe he was lawfully terminated. The City asserts that this claim amounted to a misleading representation on which the City relied to its detriment.

**{14}** "Waiver is the intentional abandonment or relinquishment of a known right." *Gomez*, 77 N.M. at 345, 423 P.2d at 33 (internal citation omitted). "[E]stoppel depends only upon what one's conduct has caused another party to do[,]" and "is justified because the estopped party reasonably could expect that his actions would induce the reliance of the other party." *J.R. Hale Contracting Co. v. United N.M. Bank*, 110 N.M. 712, 716-17, 799 P.2d 581, 585-86 (1990). Our case law has explained waiver by estoppel as being "based upon either an actual waiver or certain 'expressions or conduct' where the reliance of the opposite party and his change of position justifies the inhibition to assert the obligation or condition." *Id.* at 717, 799 P.2d at 586. For a party "[t]o prove waiver by estoppel[,] the party need only show that he [or she] was misled to his [or her] prejudice by the conduct of the other party into the honest and reasonable belief that such waiver was intended." *Id.* Therefore, the

5

following facts must be established to support a claim of waiver by estoppel: (1) the party to be estopped made a misleading representation by conduct; (2) the party claiming estoppel had an honest and reasonable belief based on the conduct that the party to be estopped would not assert a certain right under the contract; and (3) the party claiming estoppel acted in reliance on the conduct to its detriment or prejudice.

*Brown v. Taylor*, 120 N.M. 302, 305-06, 901 P.2d 720, 723-24 (1995).

{15}     There is substantial evidence to support the district court's finding that Palenick made a misleading representation when he demanded, and received, his severance benefits despite his belief that he had not actually been terminated. Following the City Council's action on December 13, 2006, Palenick demanded and received the severance benefits to which he was entitled under his employment contract in the event he was fired without cause. At the time that Palenick demanded his severance benefits he believed that the OMA had been violated and that he was still an employee of the City. Despite these beliefs, Palenick's severance demand made no mention of the OMA, his concerns that the OMA had been violated, or that he was not properly terminated. Palenick did not object to the Human Resources Department's December 27, 2006, letter which stated that effective December 13, 2006, he was no longer an employee of the City. Moreover, on the documentation in which Palenick elected to get COBRA's continuation of coverage for his health insurance, Palenick checked "end of employment" as the basis for continuing the coverage further representing to the City that he believed he had been terminated. Had Palenick believed that the City had violated the OMA, he should have complied with NMSA 1978, Section 10-15-3(B) (1997) and alerted the City to the alleged OMA violation. Section 10-15-3(B) provides that

> [a]ll provisions of the [OMA] shall be enforced by the attorney general or by the district attorney in the county of jurisdiction. However, nothing in that act shall prevent an individual from independently applying for enforcement through the district courts, provided that the *individual first provides written notice of the claimed violation to the public body* and that the public body has denied or not acted on the claim within fifteen days of receiving it. A public meeting held to address a claimed violation of the [OMA] shall include a summary of comments made at the meeting at which the claimed violation occurred.

(Emphasis added.) Palenick failed to comply with Section 10-15-3(B) and alert the City Council of the alleged OMA violation. Based on Palenick's actions it was reasonable for the City to believe that Palenick felt he had been terminated as of December 13, 2006, was no longer an employee, and was no longer entitled to his salary. Palenick even testified that the City had every reason to rely on his representations that he was requesting his severance package on the grounds that his employment had been terminated. The City did in fact rely on Palenick's representations and dispensed the severance package to which Palenick was entitled only in the event he had been terminated without cause. Therefore, Palenick's

6

failure to notify the City of the potential OMA violation, Palenick's failure to object to his termination, and his demand and acceptance of his severance package amounted to waiver by estoppel.  We, therefore, reverse the Court of Appeals.

**{16}**    Accordingly, because we conclude that Palenick's actions amounted to waiver by estoppel, we need not address whether the OMA was violated in this case or the associated issues.

## III.    CONCLUSION

**{17}**    For the reasons outlined above we conclude that Palenick waived his right to pursue a breach of contract claim and reverse the Court of Appeals.

**{18}    IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Chief Justice**

**WE CONCUR:**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
**BARBARA J. VIGIL, Justice**

**Topic Index for _Palenick v. City of Rio Rancho_, No. 33,380**

**APPEAL AND ERROR**
Standard of Review
Substantial or Sufficient Evidence

**CIVIL PROCEDURE**
Waiver

**CONTRACTS**
Breach

**EMPLOYMENT LAW**
Termination of Employment

**GOVERNMENT**
Municipalities
Open Meetings Act